UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

IN THE MATTER OF THE SEARCH OF          )
COMPUTER SERVERS AND RECORDS            )          Case No.: 18-mj-233-01-AJ
OF GOOGLE INCORPORATED FOR              )
INFORMATION ASSOCIATED WITH             )
THE E-MAIL ACCOUNTS                     )          UNDER SEAL

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, BRENDAN M. QUINLAN, being first duly sworn, hereby state:

INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent employed by the Office of Export Enforcement (OEE),

Bureau of Industry and Security ("BIS"), of the United States Department of Commerce.  I have

been employed as a Special Agent with the United States Department of Commerce since

November 2016, and before that was a Special Agent with the Department of State, Diplomatic

Security Service beginning in March 2010.  Prior to that, I was an Immigration Enforcement

Agent with the United States Department of Homeland Security for approximately three years.  I

am authorized to make arrests for violations of federal law and I am familiar with the means by

which individuals use computers and information networks to commit various crimes.

2.      Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that the individuals and entities listed below, and others, are

violating the International Emergency Economic Powers Act, in violation of 50 U.S.C. §§ 1702

and 1705, by exporting U.S.-origin goods to the Advanced Engineering Research Organization

(AERO), an entity in Pakistan currently on the Bureau of Industry and Security Entity List, and

as such, denied from receiving such goods.  Their activities are also violations of 13 U.S.C. §

305 (unlawful export information activities), 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 554

(outbound smuggling), 18 U.S.C. § 1001 (false statements), and 18 U.S.C. § 1956 (money laundering) (further referred to as the "Subject Offenses.")

3.　　The individuals and entities listed below, as well as their last known addresses, constitute a procurement network that exists to acquire U.S.-origin commodities for AERO in violation of the Subject Offenses:

a.　　Haji Wali Muhammad Shiekh ████████████████ Mississauga, Ontario, Canada

b.　　Muhammad Wali, ████████████ Mississauga, Ontario, Canada

c.　　Kamran Wali, 1st Floor, ████████████ Saddar, Rawalpindi, Punjab, Pakistan

d.　　Jason Gao, 2nd Floor, ████████████████ Kowloon, Hong Kong

e.　　M.A. Khan, ████████████████████ Kowloon, Hong Kong

f.　　Waheed Ahmed, ████████████ Essex, UK

g.　　Shamsa Ahmed, ████████████ Essex, UK

h.　　Hina Iqbal, Oak Field House, ████████████ Essex, United Kingdom

i.　　Rana Tanveer, ████████████ Beckley, WV

j.　　Buziness World, 4453 Weeping Willow Drive, Mississauga, Ontario, Canada

k.　　Business World, 2nd Floor, Kau On Building, 251-253 Cheung Sha Wan Road, Kowloon, Hong Kong

Page 2



l.       Industria HK Ltd, 2nd Floor, Kau On Building,

Kowloon, Hong Kong

m.      Transcool Auto Air Conditioning, 2nd Floor, Kau On Building,

Kowloon, Hong Kong

n.      Business World, 1st Floor, Jahanzeb Center           addar, Rawalpindi,

Punjab, Pakistan

o.      Product Engineering, Unit 10, Chowk Gowalmandi,

Rawalpindi, Punjab, Pakistan

p.      Business International GB, Oak Field House

Essex, United Kingdom

q.      Industria GB           in Romford, UK

r.      Industria, Inc.           Beckley, WV


4.      I submit this affidavit in support of an application for a warrant under 18 U.S.C.

§ 2703(a) and Rule 41 of the Federal Rules of Criminal Procedure to search and seize records

and data from the e-mail accounts identified as           ment.log@gmail.com (TA1),

log@gmail.com (TA2), logofficer           @gmail.com (TA3), logistics           @gmail.com

(TA4), zeetan           @gmail.com (TA5), industri           @gmail.com (TA6),

businessworld           @gmail.com (TA7)  and buzns           @gmail.com (TA8)  ("the Target

Accounts") (as described in Attachment A).

5.      I have probable cause to believe that these accounts contain evidence of the

crimes identified above, as described in Attachment B.

6.      Based on the e-mail addresses' domain name, I have probable cause to believe that the accounts and relevant data are maintained by Google, Inc. ("Google"), which government databases indicate, accepts service of process at 1600 Amphitheatre Parkway, Mountain View, California, as described in Attachment A.

7.      The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

<u>RELEVANT LAW</u>

8.      Under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, the President of the United States was granted authority to deal with unusual and extraordinary threats to the national security, foreign policy, or economy of the United States.  50 U.S.C. § 1701(a).  Pursuant to that authority, the President may declare a national emergency through Executive Orders that have the full force and effect of law.  Among other things, IEEPA empowers the President to issue regulations governing exports from the United States.

9.      On September 19, 2012, acting under the authority of IEEPA, the multi-agency body known as the End-user Review Committee (ERC) added language to a previous entry on the BIS Entity List for the Pakistan Atomic Energy Commission.  This modification stated that "Nuclear reactors (including power plants)" would be subject enhanced scrutiny for exports.  The current iteration of the CFR as of November 08, 2018 denotes that there is a "presumption of approval for EAR99 items."  EAR99 is a classification given by BIS that is used to denote commodities that are subject to no expanded export controls by the US Government.

10.     On September 18, 2014, the ERC "determined to add Pakistan's Advanced Engineering Research Organization (AERO) and entities working with AERO to the Entity List for their involvement in activities contrary to the national security and foreign policy interests of the United States related to the illicit export, reexport and transfer (in-country) of items subject to the EAR to unauthorized end users in Pakistan as described in § 744.11(b)(5) of the Export Administration Regulations (EAR, 15 CFR §§730-774). These entities' involvement in the procurement of sensitive U.S. technology in support of Pakistan's development of its missile and strategic unmanned aerial vehicle (UAV) programs is in violation of § 744.3 of the EAR, which requires a license to export, reexport or transfer (in-country) any item subject to the EAR that the exporter, reexporter, or in-country transferor knows will be used in the design, development, production or use of rocket systems by a country listed in the EAR's Country Group D:4 in Supplement No. 1 to part 740, in which Pakistan is included."[1]

11.     Effective December 15, 2016, the ERC added the Pakistan Air Weapons Complex (and six other entities) to the BIS Entity List, writing that they "Have been involved in actions contrary to the national security or foreign policy interests of the United States." And that "Pursuant to § 744.11(b) of the EAR, the ERC determined that the conduct of these seven persons raises sufficient concern that prior review of exports, reexports or transfers (in-country) of items subject to the EAR involving these persons, and the possible imposition of license conditions."

---

[1] As published in The Federal Register on September 19, 2014, 79 FR 55998, pages 55998-56009.

12.     In furtherance of the restrictions on AERO, on January 18, 2018 BIS added the alias "Integrated Solutions" at Lub Thatoo, Hazara Road, The Taxila District, Rawalpindi, Pakistan as an AKA for AERO to the entity list.

13.     I know from my training and experience that Pakistan's unregulated nuclear and UAV programs regularly employ a network of individuals and companies in third countries in order to obscure the ultimate end-user of commodities as well as the source of payment for the same.  In fact, as part of the addition of AERO to the BIS Entity List, it was published that "Since 2010, Pakistan's AERO has used intermediaries and front companies to procure U.S.-origin items by disguising the end-uses and end-users of the items from U.S. exporters thereby circumventing BIS licensing requirements," and that "AERO has procured items on behalf of Pakistan's Air Weapons Complex (AWC), a Pakistani government entity responsible for Pakistan's cruise missile and strategic UAV programs."

14.     Under IEEPA, it is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any order, license, regulation, or prohibition issued pursuant to the statute.  50 U.S.C. § 1705(a).  Willful violations of the EAR constitute criminal offenses under IEEPA, and carry a 20-year maximum term of imprisonment and up to a $1,000,000 fine.  50 U.S.C. § 1705(c).  Accordingly, an export that was completed or attempted with the intent that it would ultimately be destined for AERO or the Pakistan AWC would be in violation of IEEPA.

15.     I am also aware from my training and experience that entities such as AERO and the Pakistan AWC employ mechanisms by which they obfuscate the source of payments for commodities destined for companies and individuals on the BIS Entity List.  Violations of IEEPA are "specified unlawful activities" as defined in 18 U.S.C. § 1956.  Therefore, an attempt to "disguise the nature, the location, the source, the ownership, or the control of the proceeds" or

transferring funds from outside the United States to inside the United States is violation of the money laundering statute.

16.    Moreover, some of the information contained in this affidavit comes from my review of the Automated Export System (AES) database maintained by US Customs and Border Protection.  AES contains information provided to the United States Department of Commerce in the form of Electronic Export Information (EEI) forms.  These forms must be filed by parties to the transaction that are in the United States, such as the seller or shipping company (15 CFR § 30.3), and contain information about all of the parties involved in the transaction.  Providing false information, or causing false information to be provided to the United States Department of Commerce on an EEI, is a violation of 13 U.S.C. § 205 and 18 U.S.C. § 1001.

## PRIOR WARRANT

17.    This court, on September 27, 2018, issued a search warrant for Google, Inc. for the contents of the following e-mail accounts:  industria ____ @gmail.com, buziness ____ @gmail.com,  Asad ____ @gmail.com, business ____ @gmail.com, Buzinesswo ____ @gmail.com, wali.produc ____ @gmail.com,  buzinessworld ____ @gmail.com, proc.business ____ @gmail.com,  transcool ____ @gmail.com, transcoolau ____ @gmail.com, businessinternat ____ @gmail.com,  magihu ____ @gmail.com, and proden ____ @gmail.com.  Some of the information contained in this affidavit comes from the data returned by Google to me pursuant to this warrant.

## FINANCIAL TRANSACTIONS

18.    Throughout my investigation, businesses in the United States have provided me with information that shipments they sent to Hong Kong, the United Kingdom, Canada and Pakistan have been paid for by "Buziness World" and Haji Wali Muhammad Shiekh of Ontario, Canada.

19.     Records maintained by the government of the Province of Ontario, Canada, which I have reviewed, reflect that "Buziness World" is registered in Ontario under Business Identification Number 270217102.   Moreover, it is a Sole Proprietorship registered to Haji Wali Muhammad Sheikh of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in Mississauga, Ontario.  According to employees of the US Department of State with whom I have corresponded, this is a residential address.

20.     Two prevalent ways by which money that is exchanged in dollars is transferred between financial institutions are The Clearing House for Interbank Payment Systems (CHIPS) and the Federal Reserve Bank of New York wire services (Fedwire).  Pursuant to a grand jury subpoena, both Fedwire and CHIPS provided information about money transfers involving the numerous parties identified as assisting in the unlawful procurement of U.S. origin goods. According to CHIPS, in May and June of 2014, The Canadian Imperial Bank of Commerce account controlled by the Buziness World of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Missisauga, Ontario, Canada received five wire transfers totaling approximately $19,000 USD from an account held by "Director Finance Project 250" ("DFP 250") at the United Bank of Pakistan.  DFP 250 is not listed on the BIS Entity List, nor have I been able to identify any exports received by them in Pakistan or elsewhere.

21.     The account number at the United Bank of Pakistan for DFP 250 is 2066 ▓▓▓▓ Beginning in July of 2014, this account reflects a name change to "The Business World." Subsequent wire transfers from the account in the name of Business World in Pakistan to Buziness World in Canada continue until at least February of 2017.

22.     Fedwire information indicates that Buziness World in Mississauga, Ontario, as well as a ▓▓▓▓▓▓▓▓ Unit 1806 Etobicoke, Ontario (using a Royal Bank of Canada account)

have both received funds from The Business World in Rawalpindi, Pakistan using a National

Bank of Pakistan account. These wires begin in March of 2015 and continue until at least June of

2017 and totaled approximately $141,953 USD.  The funds that are wired out of the Royal Bank

of Canada account to US businesses are completed using the name "Haji Wali Muhammad

Sheikh" at

      23.     JP Morgan Chase (JPMC) bank provided me with information about accounts

held by "DFP 250" at United Bank of Pakistan and the National Bank of Pakistan.  Although

DFP 250 is not a customer of JPMC, United Bank of Pakistan maintains a correspondent account

with JPMC.  According to documents provided to me by JPMC, in March of 2017, DFP 250

received in excess of $5 million USD in two wires from an account at Habib Metropolitan Bank

Limited in Pakistan that is held by DFP 250, but which also lists AERO as a holder of the

account.  One of the accounts credited was number 2066      at United Bank Limited of

Pakistan.

      24.     Deutsche Bank USA (DBUSA) provided me with information in its possession

about accounts held by DFP 250 at banks with which it has a correspondent relationship in

Pakistan.  DBUSA provided documentation that shows United Bank Limited, Pakistan has

account number 2066     registered to DFP 250.  However, three transactions in 2014 list the

owner of this account as AERO.

      25.     DBUSA also provided documentation that in April of 2014, DFP 250 used United

Bank account number 20666     to transfer $800,000 USD to AERO at Habib Bank in

Pakistan.  Moreover, DBUSA shows that the address for DFP 250 and AERO at United Bank

Limited are all the same:  Central Registry, Hazara Road, Hassanabdal, Dist. Attock, Pakistan.

26.     Documents from the banks and wire services reflect that AERO, DFP 250, and The Business World in Pakistan all use a registration code of "9010628-8."  According to a website maintained by the Pakistani Federal Board of Revenue, this is a "free tax number" assigned to the Pakistan Air Weapons Complex by the Pakistan Federal Board of Revenue.  A Free Tax Number is "issued by the Board to persons who are otherwise exempt from holding National Tax Number (NTN) for the purposes of identification."  This number was given as part of the account holder information for account number 2066     as late as 2016, which was subsequently retitled to The Business World.

27.     Documentation from the National Bank of Pakistan, New York Branch, supports this information.  These data also reflect that four times between 2016 and 2018, funds totaling at least $25,224.39 were sent from the Business World account at the National Bank of Pakistan to Business International in the United Kingdom using accounts at United National Bank, HSBC, and the National Bank of Pakistan.

28.     CHIPS records reflect that, at least once in 2015, Industria in West Virginia received a wire from Business International GB of 3 Oak Field House in Ilford, Essex, UK. Also, Industria of West Virginia received one wire in 2015 and one in 2017 from Industria GB on 109 Rose Lane in Romford, UK. Moreover, in 2018 Industria in West Virginia received one wire from Industria in Hong Kong.

29.     While DFP 250 is not listed on the BIS Entity List, nor have I been able to identify any exports received by them in Pakistan or elsewhere, the information returned to me pursuant to the prior warrant revealed information about them.  Specifically, as recently as March 30, 2018 buziness    @gmail.com received a purchase order from procurement   @gmail.com (TA1) for "Director Finance, Project 250" at Central Registry,

Hazara Road, Hassan Abdal, Attock, Pakistan.  The phone number listed is 0572-520-522 and

the fax number is 051-9018-7228.  This purchase order, number PO-000568-17-18, contains as a

line item a pressure gauge made by Ametek Crystal, a company in San Luis Obispo, California.

The "Payment Terms" state that: "Payment to M/s Buziness World, Canada / M/s Business

International GB Ltd / M/s Business World, Hong Kong / M/s Industria, Hong Kong Ltd / M/s

Dutch Tech Engineering B.V M/s Future Tech after receipt and on acceptance of items at

Buyer's site against Commercial Invoice through TT in equivalent HKD, RMB or Canadian

Dollars."

      30.     This purchase order also states that the e-mail for DFP 250 is

shipment⬜@gmail.com (TA2) It also lists as a contact person Ahsan Awan at 051-4517-⬜,

and gives an e-mail address for Awan of logofficer⬜@gmail.com (TA3).

      31.     A review of other documents finds that on November 23, 2016 Buziness World

also received a purchase order from AERO, sent from the e-mail account

procurement⬜@gmail.com (TA1).  The font, layout, and language all appear to be the same as

that of PO-000568-17-18 from DFP 250.  The phone number listed is 0572520522 and the fax is

051-90187228, the same numbers as the PO from DFP 250.  The e-mail given for the consignee

is shipment⬜@gmail.com (TA2)

      32.     Also, on January 25, 2016 an e-mail was sent from

⬜businessworld@gmail.com to logofficer⬜@gmail.com (TA3) that contained a letter from

Faisal Sattar of The Business World in Pakistan to Mr. Ahsan Awan, "AM Logistics" for AERO.

AERO / BUSINESS WORLD TRANSACTION IN NEW HAMPSHIRE

33.     AES records show that Microdaq.com in Contoocook, NH exported products to

"Product Engineering" in Rawalpindi, Pakistan on December 20, 2016.  I met with employees of

Microdaq who confirmed that they did ship "MCC 100/Dual 50-Pin Hi-Density Cable" valued at

$1344 USD and "MCC 16-Channel, 16-Bit Analog Output Board" valued at $5172 USD to this

company. The point of contact was Waqar Imran, phone number 92321555      , e-mail address

proden     @gmail.com.

34.     Microdaq also provided documentation showing that the payment for this

shipment came from the Canadian Imperial Bank of Commerce account maintained by Buziness

World.

35.     Data provided to me by Google reflects that on July 02, 2015 an e-mail was sent

from procurement    @gmail.com (TA1) to buziness      @gmail.com that contained "Tender

Enquiry" number 000004-15-16 from AERO.  This enquiry sought out the exact model numbers

and quantity of the products purchased by Product Engineering from Microdaq.com.

36.     Subsequently, on May 04, 2016 Purchase Order number 000960-15-16 from

AERO was sent from procurement.    @gmail.com (TA1) to buziness      @gmail.com for

these products and others.  Copied on this e-mail was logistics    @gmail.com (TA4). This

purchase order denotes that payment will be made to "BW Canada."

37.     On November 28, 2016 a quote from Microdaq.com for these products was

forwarded from proden    @gmail.com to     services@hotmail.com and

bzw   @hotmail.com.  Subsequently, a pro forma invoice from Microdaq.com was sent from

prode    @gmail.com to bzw   @hotmail.com and    services@hotmail.com on December

5, 2016.

38.     In turn, on December 7, 2016 a wire report reflecting that Buziness World Canada paid Microdaq.com was sent from bzw░░@hotmail.com to proden░░@gmail.com.

## AERO / BUSINESS WORLD TRANSACTION THROUGH WEST VIRGINIA

39.     The data received from Google shows that on 28 July 2015, an e-mail was received by buziness░░@gmail.com from procurement░░@gmail.com (TA1) entitled "TE-00041-15-16."  This e-mail contained a "Tender Enquiry" from AERO.  This enquiry sought items from "RTD."  A check of the part numbers reflects that they are manufactured by RTD Embedded Technologies of State College, PA.

40.     On March 11, 2016, proc.buziness░░@gmail.com, associated with Faisal Sattar in Rawalpindi, Pakistan, sent Purchase Order number to BWBI/35451224-WO to Business International GB Ltd of 109 Rose Lane, Romford, Essex, UK.  This PO is for the exact parts and quantity of the AERO Tender Enquiry dated July 24, 2015.

41.     On May 10, 2016, zeeta░░@gmail.com (TA5) sent to buzines░░@gmail.com Quotation number Q09159-0 from RTD technologies that contains the exact part numbers and quantity of the items sought by AERO in the Tender Enquiry dated July 24, 2015.  The quotation is for:

Industria Inc.

205 Prince Street

Beckley, WV 25801

Attn: Shaan Tanveer

Phone: 703-786-4187

Email: industria░░@gmail.com (TA6)

42.     On September 10, 2016 the user of industri     @gmail.com (TA6) forwarded a message to buziness     @gmail.com entitled "RTD Invoices."  This e-mail chain is between "Shaan" of Industria and Brenda Poorman, Office and Manufacturing Assistant for RTD.  In it, the two discuss the need for Shaan to pay RTD.

43.     Subsequently, on October 25, 2016 buziness     @gmail.com sent zeetan     @gmail.com (TA5) an e-mail entitled "RTD shipment delivery address."  This e-mail reflects the following address, which is the same address used in a shipment by Comstat, Inc. of Brentwood, New Hampshire during the same time frame:

CTI HK Co. Ltd

S/O# E1617618

AIR WAREHOUSE

UNIT 01A, G/F., PROFT INDUSTRIAL BUILDING

1-15 KWAI FUNG CRESCENT, KWAI CHUNG, N.T., HONG KONG

Tel: +852 2334 6311

44.     On November 08, 2016 buzines     @gmail.com sent to zeetan     @gmail.com (TA5) a Microsoft Word document entitled Invoice.doc.  This document is invoice number 1010 for the same RTD parts from Industria Inc. of 205 Prince St., Beckley, WV to:

Transcool Auto Air Conditioning Products

253.2nd Floor Kau On Building

251-253 Cheung Sha Wan Road

Sham Shui Po

Kowloon Hong Kong

45.     On November 8, 2016 Faisal Sattar of The Business World in Pakistan

(faisal.sattar@buzines⬚com), upon request from buzines⬚@gmail.com, sent a Microsoft

Word document entitled "Invoice Details.docx."  This document contained, amongst two other

commodities, the exact part numbers and quantity of the items purchased by Product Engineering

from Microdaq.com.

46.     Then, on December 8, 2016 businessworld.⬚@gmail.com (TA7) sent an e-

mail to businesswo⬚@hotmail.com, copying buziness⬚@gmail.com, which contains as an

attachment Buziness World Hong Kong invoice number 5376.  This invoice shows that the exact

RTD products that were sought by AERO, were requested through Business International GB

and purchased by Industria Inc.

<u>RECENT NEW HAMPSHIRE TRANSACTION</u>

47.     On October 30, 2018 I met with employees of Ty-Flot, a business in Manchester,

New Hampshire.  They provided me with documentation for shipments they sent to Business

World in Pakistan of industrial safety equipment that were described as used for "Foreign

Material Exclusion" purposes.  Their communication was with Kamran Wali at The Business

World using the e-mail address kamran@buziness⬚com, and Sohail Rafique of The

Business World in Pakistan, who used the e-mail address buzns⬚@gmail.com (TA8).

48.     Ty-Flot furnished me with correspondence supporting the documents located in

the prior warrant.  Specifically, starting at least as early as March 6, 2017 an individual

identifying himself as Sohail Rafique, an employee of The Business World in Rawalpindi,

Pakistan, and using the e-mail address buzns⬚@gmail.com (TA8), requested the price and

availability for seven line items of equipment sold by Ty-Flot.  Beginning in October of 2017,

Ty-Flot began to be contacted by Kamran Wali using the e-mail account

kamran@buzines       com.

49.     Also obtained via the prior search warrant is an e-mail attachment that I recognize

as being a Bill of Lading.  This document indicates that commodities purchased from Ty-Flot

were exported from the United States via sea by Freight Systems, Inc., a Pakistani freight

forwarder, on July 07, 2018.   This documentation also reflects that The Buziness World in

Mississauga, Ontario, Canada is the shipper of the product.

50.     The e-mail message that contains as an attachment the Bill of Lading also

contains a letter from The Business World to the "Manager (Procurement), Chasma Nuclear

Power Plant Project Unit 3&4" explaining that there has been a problem with this shipment.  The

website for the Pakistan Atomic Energy Commission (PAEC) lists the Chasma Nuclear Power

Plant as one of its assets.

51.     I believe through my training and experience that these items would be classified

by BIS as loosely controlled "EAR99" items.  However, pursuant to the presence of PAEC on

the Entity List, a BIS export license would be required for this shipment.  I have reviewed BIS

databases and have been unable to find any indication that any party in this transaction requested

an export license from BIS.  Moreover, senior employees of Ty-Flot, who would have been

responsible for applying for such a license, displayed no knowledge of BIS in October of 2018.

PRESERVATION OF EVIDENCE

52.     On or about October 24, 2018, pursuant to 18 U.S.C. § 2703(f)(1), I sent a

preservation request letter to Google for procurement    @gmail.com (TA1).

53.     On or about November 01, 2018 I sent a preservation request letter to

Google for buzn       @gmail.com (TA8).

54.     On or about November 7, 2018 I sent a preservation request letter to Google for

shipmen   @gmail.com (TA2), logofficer   gmail.com (TA3), logistics.   @gmail.com

(TA4), zeeta   gmail.com (TA5), industria   @gmail.com, (TA6), and

businessworld.   @gmail.com  (TA7).

55.     Based on the aforementioned facts, I submit that there is probable cause that the

users of the Target Accounts in Pakistan and parties in the United Kingdom, Canada, Hong

Kong, Pakistan, and the United States, have acted in furtherance of a conspiracy to purchase US-

origin goods for ultimate shipment to entities in Pakistan which are prohibited from receiving US

Exports.  As such, their actions constitute violations of the Subject Offenses.  Accordingly,

probable cause exists that evidence of this illegal conduct is present in the Target Accounts.

<u>TECHNICAL BACKGROUND</u>

56.     In my training and experience, I have learned that Google provides a variety of

online services, including e-mail access, to the public.  Google allows subscribers to obtain e-

mail accounts at the domain name gmail.com, like the Target accounts.  Subscribers obtain an

account by registering with Google.  During the registration process, Google asks subscribers to

provide basic personal information.  Therefore, Google's computers are likely to contain stored

electronic communications (including retrieved and unretrieved e-mail for Google subscribers)

and information concerning subscribers and their use of Google services, such as account access

information, e-mail transaction information, and account application information.  In my training

and experience, such information may constitute evidence of the crimes under investigation

because the information can be used to identify the account's user or users.

57.     Google e-mail subscribers can access their accounts on servers maintained and/or

owned by Google from any computer connected to the Internet located anywhere in the world.

E-mail messages and files sent to an Google account are stored in the account's "inbox" as long as they are not identified as "junk mail," the account has not exceeded the maximum storage limit, or the account is not set up to forward messages to another e-mail account. If the message/file is not deleted by the subscriber, the account is below the maximum storage limit, and the account has not been inactivated, then the message/file will remain on the server indefinitely. E-mail messages and files sent from a Google account will remain on the server unless the account user changes the default account settings.

58.     A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail. If a Google e-mail user writes a draft message but does not send it, that message may also be saved by Google but may not include all of these categories of data.

59.     In my training and experience, in addition to e-mails, Google subscribers can also store files such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), and other files, on servers maintained and/or owned by Google. Evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

60.     In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. Such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

LEGAL AUTHORITY

61.     The government may obtain both electronic communications and subscriber information from an e-mail provider by obtaining a search warrant.  18 U.S.C. §§ 2703(a), 2703(c)(1)(A).

62.     Any court with jurisdiction over the offense under investigation may issue a search warrant under 18 U.S.C. § 2703(a), regardless of the location of the website hosting company or e-mail provider whose information will be searched.  18 U.S.C. § 2703(b)(1)(A). Furthermore, unlike other search warrants, § 2703 warrants do not require an officer to be present for service or execution of the search warrant.  18 U.S.C. § 2703(g).

63.     If the government obtains a search warrant, there is no requirement that either the government or the provider give notice to the subscriber.  18 U.S.C. §§ 2703(b)(1)(A), 2703(c)(3).

64.     This application seeks a warrant to search all responsive records and information under the control of Google, a provider subject to the jurisdiction of this court, regardless of where Google has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Google's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States. 18 U.S.C. § 2713.

FOURTEEN-DAY RULE FOR EXECUTION OF WARRANT

65.     Federal Rule of Criminal Procedure 41(e)(2)(A),(B) directs the United States to execute a search warrant for electronic evidence within 14 days of the warrant's issuance.  If the

Court issues this warrant, the United States will execute it not by entering the premises of Google, as with a conventional warrant, but rather by serving a copy of the warrant on the company and awaiting its production of the requested data.  This practice is approved in 18 U.S.C. § 2703(g), and it is generally a prudent one because it minimizes the government's intrusion onto Internet companies' physical premises and the resulting disruption of their business practices.

66.      Based on my training and experience and that of other law enforcement, I understand that e-mail providers sometimes produce data in response to a search warrant outside the 14-day period set forth in Rule 41 for execution of a warrant.  I also understand that e-mail providers sometimes produce data that was created or received after this 14-day deadline ("late-created data").

67.      The United States does not ask for this extra data or participate in its production.

68.      Should Google produce late-created data in response to this warrant, I request permission to view all late-created data that was created by Google, including subscriber, IP address, logging, and other transactional data, without further order of the Court.  This information could also be obtained by grand jury subpoena or an order under 18 U.S.C. § 2703(d), neither of which contains a 14-day time limit.  However, law enforcement personnel will seek to avoid reviewing any late-created data that was created by or received by the account-holder(s), such as e-mail communications, absent a follow-up warrant.

69.      For these reasons, I request that the Court approve the procedures in Attachment B, which set forth these limitations.

CONCLUSION

70.     Based on the information described above, I have probable cause to believe that

records and data from the Target Accounts (as described in Attachment A), contain evidence of

the above-listed crimes (as described in Attachment B).

71.     The procedures for copying and reviewing the relevant records are set out in

Attachment B to the search warrant.

Respectfully submitted,


/s/ Brendan M. Quinlan
Brendan M. Quinlan
Special Agent
Office of Export Enforcement
Bureau of Industry and Security
United States Department of Commerce



Subscribed and sworn to before me on this 9th day of November, 2018




/s/ Andrea K. Johnstone
ANDREA K. JOHNSTONE
United States Magistrate Judge

**ATTACHMENT A**

The premises to be searched and seized are (1) the e-mail accounts identified as

procuremen⬛@gmail.com (TA1), shipment⬛@gmail.com (TA2),

logoffice⬛@gmail.com (TA3), logistic⬛@gmail.com (TA4), zeeta⬛@gmail.com

(TA5), industria⬛@gmail.com (TA6), businessworld⬛@gmail.com (TA7)  and

buzn⬛@gmail.com (TA8)  ("the Target Accounts"), (2) other user-generated data stored

with the Target Accounts, and (3) associated subscriber, transactional, user connection

information associated with the Target Accounts, as described further in Attachment B.  This

information is maintained by Google, Inc. ("Google"), which accepts service of process at 1600

Amphitheatre Parkway, Mountain View, California.

# ATTACHMENT B

**I.    Search Procedure**

        A.      Within fourteen days of the search warrant's issue, the warrant will be served on Google, which will identify the accounts and files to be searched, as described in Section II below.

        B.      Google will then create an exact electronic duplicate of these accounts and files ("the account duplicate").

        C.      Google will provide the account duplicate to law enforcement personnel.

        D.      Law enforcement personnel will then search the account duplicate for the records and data to be seized, which are described in Section III below.

        E.      Law enforcement personnel may review the account duplicate, even if it is produced more than 14 days after the warrant issues, subject to the following limitations.  If data was created by Google after fourteen days from the warrant's issue ("late-created data"), law enforcement personnel may view any late-created data, including subscriber, IP address, logging, and other transactional data that was created by Google without a further order of the Court. Law enforcement personnel will seek to avoid reviewing any late-created data that was created by or received by the account-holder(s), absent a follow-up warrant.

**II.     Accounts and Files to Be Copied by Google Personnel**

A.      All data files associated with the Target accounts within the possession, custody, or control of Google, regardless of whether such information is stored, held or maintained inside or outside of the United States, including:

1.      The contents of all e-mail, whether draft, deleted, sent, or received;

2.      The contents of all text or instant messages;

3.      The contents of all electronic data files, whether word-processing, spreadsheet, image, video, or any other content;

4.      The contents of all calendar data;

5.      Lists of friends, buddies, contacts, or other subscribers;

6.      Records pertaining to communications between Google and any person regarding the Target Accounts and any e-mail accounts associated with the Target Accounts, including contacts with support services and records of actions taken.

B.      All subscriber and transactional records for the Target Accounts and any associated e-mail accounts, including:

1.      Subscriber information for these and any associated e-mail accounts:

a.      Name(s) and account identifiers;

3

  b.  Address(es);

  c.  Records of session times and durations;

  d.  Length of service (including start date) and types of service utilized;

  e.  Telephone instrument number of other subscriber number or identity, including any temporary assigned network address;

  f.  The means and source of payment for such service (including any credit card or bank account number); and

  g.  The Internet Protocol address used by the subscriber to register the account or otherwise initiate service.

2.  User connection logs for any connections to or from the Target Accounts and any associated e-mail accounts, including:

  a.  Connection time and date;

  b.  Disconnect time and date;

  c.  The IP address that was used when the user connected to the service;

  d.  Source and destination of any e-mail messages sent from or received by the account, and the date, time, and length of the message; and

  e.  Any address to which e-mail was or is to be forwarded from the Target Account.

4

### III.    Records and Data to be Searched and Seized by Law Enforcement Personnel

A.    The items to be seized, which are believed to be evidence and fruits of violations of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1705; and, the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 730-774; and the Subject Offenses, including an ongoing criminal conspiracy to commit these offenses, 18 U.S.C. § 371, are as follows:

1.    Records and information related to violations of the aforementioned statutes and regulations;

2.    Records and information related to any purchases, sales, or requests for purchase or sale of suspected U.S.-origin goods or suspected export-controlled items;

3.    Records and information related to payments for any U.S.-origin goods or suspected export-controlled items, including bank records, wire transfers, checks, credit card bills, account information, PayPal transactions; other payment websites, or other financial records;

4.    Records and information related to any shipping, delivery, or customs declaration of U.S.-origin goods or suspected export-controlled items;

5

5.      Records and information related to actual or potential buyers and sellers of U.S.-origin goods or suspected export-controlled items, including biographical information, addresses, e-mail addresses, user names, social security numbers, or other pertinent identifying information;

6.      Records and information related to the identity and whereabouts of any of the individuals or entities associated with the Target Accounts, including biographical information, addresses, e-mail addresses, user names, social security numbers, or other pertinent identifying information;

7.      Records and information related to the use or planned use of U.S.-origin goods or suspected export-controlled items;

B.      All of the subscriber, transactional, and logging records described in Section II(B).

6

## CERTIFICATE OF AUTHENTICITY

I, _____, attest, under penalties of perjury, that the information contained in this declaration is true and correct.  I am employed by Google, Inc., and my official title is _____.  I am a custodian of records for Google, Inc.  I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Google, Inc., and that I am the custodian of the attached records consisting of _____ (folders/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Google, Inc.; and

c.      such records were made by Google, Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____
           Date                                                  Signature